[No. A122630. First Dist., Div. Five. Dec. 3, 2009.]

DAVID PALAND, Plaintiff and Appellant, v.
BROOKTRAILS TOWNSHIP COMMUNITY SERVICES DISTRICT
BOARD OF DIRECTORS, Defendant and Respondent.

**1360**   .

COUNSEL

David Paland, in pro. per., for Plaintiff and Appellant.

Christopher J. Neary for Defendant and Respondent.

OPINION

BRUINIERS, J.—This appeal requires us to construe certain provisions in the taxpayer initiative Proposition 218 (Cal. Const., arts. XIII C, XIII D)[1] distinguishing between what may properly be classified as a property-related water or sewer fee, exempt from a requirement for ballot approval by a

___

[1] All article references are to articles of the California Constitution.

majority of affected property owners, and an assessment for which such a vote is mandated. We conclude that a minimum charge imposed on parcels with connections to a water district's utility systems for the basic cost of providing water or sewer service, regardless of actual use, is a charge for an immediately available property-related water or sewer service as defined in article XIII D, section 6, subdivision (b)(4), and consequently does not require ballot approval by affected owners. We therefore affirm the trial court's judgment for the water district.

### BACKGROUND

The Brooktrails Township Community Services District (District) was formed to provide water and sewer service to about 6,500 real property parcels in or near Willits, California. (Gov. Code, § 61000 et seq.)[2] About 1,536 of the parcels are currently connected to the District's water system, and about 1,490 are connected to its sewer system. The rest of the parcels are undeveloped and not yet connected to the District's utility systems. Parcels not connected to the water and sewer systems are charged annual water availability and sewer standby fees. Parcels connected to the water and sewer systems are charged connection fees at the time of hookup to the systems, and thereafter fixed monthly water and sewer "base rates," as well as inclining usage-based rates for water service. The sewer connection is not a metered service, and is therefore not subject to a usage charge beyond the monthly base rate.

Appellant David Paland, a property owner in the District, connected his parcel to the water and sewer systems in 1986 and paid $1,800 in connection fees. In the decades that followed, he periodically discontinued his water service when he was away from his home for extended periods of time or when he asserts he could not afford the service. On such occasions, he was historically charged a prorated amount of the water and sewer base rates for the month in which his service was discontinued and was not charged again until he requested reactivation of his water service. Until 2003, it was District policy not to charge base rates to parcels with existing connections that were inactive because the parcels were either undeveloped or unoccupied, or because the owners had temporarily discontinued their service.

The District changed its policy in 2003. At the time, the State Department of Health Services had imposed a moratorium on new connections pending an increase in the District's water storage capacity. The State Department of Health Services mandates increased the District's capital investment costs and

---

[2] All statutory references are to the Government Code unless otherwise indicated.

eliminated its income from new connections.[3] On March 11, 2003, the District's Board of Directors (Board) decided to begin charging established monthly base rates[4] to parcels with existing utility connections, regardless of whether the owner was actually using the District's services.[5] On April 24, 2003, District General Manager Michael Chapman wrote to Paland and 20 other property owners with currently or periodically inactive water meters informing them of the change of policy.

Paland protested the new policy. He questioned the Board's statutory authority to impose monthly base rates on inactive connections, arguing that the practice was "in the nature of a standby fee" and that the Board had not complied with Proposition 218 or due process. Although the Board did not rescind its policy, Paland took no immediate legal action because he "did not become aware that the thing had actually gone through as any kind of ordinance . . . ." He did not discontinue his water service between 2003 and 2006.

In late 2006, Paland fell behind on his monthly bills. In October 2006, the District notified him that his service would be shut off if he did not pay the arrears. In a letter to the district general manager dated December 25, 2006, Paland wrote that his water had been turned off, that he would pay the arrears as soon as he could, that he could not afford to pay ongoing base rates because he was unemployed, and, "For that reason, I have no plans to ask you to turn the water back on until I can afford the huge base rate." By the end of January 2007, Paland apparently had paid his arrears through November 2006. Paland's subsequent monthly bills reflect no actual water usage. The District, however, continued to charge Paland the monthly base rates for both water and sewer services.

On May 17, 2007, Paland sued the Board for declaratory and injunctive relief. He alleged that in 2007, pursuant to the 2003 policy, the District began charging him monthly base rates (as adopted in resolution No. 2006-17 on June 27, 2006) for time periods when he had requested that his water service be turned off. He again argued the monthly base rates, when charged to customers whose water service had been turned off, were "standby charges" subject to the owner voting requirements of article XIII D, section 4, and that the District had failed to comply with those requirements. He sought a

---

[3] Counsel for the District represented that the cost of a new connection, assuming one could be obtained at all, was about $10,000 at the time of trial.

[4] The base rates charged to connected parcels are used to pay the fixed costs of operating and maintaining the water and sewer systems, as well as the capital costs of increasing the District's storage capacity so that it can continue to serve those already-connected customers.

[5] The monthly base rate for water service was $32.45 at the time of trial, and the basic monthly sewage fee was $30.07.

declaration that resolution No. 2006-17 was invalid on its face and as applied to him and also sought an injunction barring the resolution's enforcement "prior to complying with applicable voting laws." The District filed a demurrer on the ground that the complaint was filed outside the limitations period of section 66022, which provides that any judicial action to challenge a local agency resolution adopting a new fee or service charge must be commenced within 120 days of the effective date of the resolution. (§ 66022, subd. (a).) The court sustained the demurrer with leave to amend.

Paland filed an amended complaint alleging that the District adopted new water and sewer base rates on June 26, 2007, in resolution No. 2007-10, that the resolution was subject to the requirements of article XIII D, section 4, and that the District had not complied with those requirements. The Board answered the amended complaint and filed a motion to dismiss on statute of limitations grounds. The trial court ruled that Paland's renewed challenge to the 2003 policy was time-barred, but his challenge to the 2007 action of the Board was not.

Trial took place on July 8, 2008. At the conclusion of the one-day trial, the court made the following oral ruling:[6] "As to the request for declaratory relief as to Resolution 2007-10, the court finds that the Defendant or Respondent's resolution is constitutionally valid and in compliance with all applicable law. It appears that the appropriate procedures under Prop 218 for changing a rate and having it be in proportion, giving due notice to those affected, if [they] applied at all, were followed in this case. [¶] On the other hand, I think that what is driving this litigation is a fundamental confusion about whether the type of fees that Petitioner, Mr. Paland, is challenging are in fact standby fees or assessments. The court finds that they are not. [¶] The water and sewer fees in question are in fact user fees which can be increased to reflect capital improvements, changes in costs for providing the service, and that a base rate is a proper and important component of such a change in fee. [¶] For these reasons the court denies the request for injunctive relief and finds that Petitioner or Plaintiff shall take nothing by his complaint." The court entered judgment for the Board.

## DISCUSSION

The core issue in this appeal is whether the imposition of minimum monthly water and sewer base rates on parcels connected to the District utility systems, regardless of actual usage, is a property assessment subject to owner ballot approval requirements adopted in Proposition 218 (art. XIII D,

---

[6] Paland made an oral request for a written statement of decision. That request was denied by the court on the basis that the trial had been of less than eight hours' duration. (Code Civ. Proc., § 632.) His subsequent written request was denied as well.

§ 4), or is instead a fee or charge for a property-related service exempted from those requirements (art. XIII D, § 6, subd. (c)).[7] Paland argues only that the District failed to comply with Proposition 218's procedural and voting requirements for *assessments*, and does not contend that the District failed to comply with requirements for imposition of water or sewer *fees*. We conclude the disputed charges are fees and not assessments as defined in the initiative.

█ In 1996, California voters passed Proposition 218, which added articles XIII C and XIII D to the California Constitution. The initiative was intended to close perceived loopholes in the restrictions on property taxes imposed by Proposition 13.[8] (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 838–839 [102 Cal.Rptr.2d 719, 14 P.3d 930]; *Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 681 [86 Cal.Rptr.2d 592] (*Riverside*).) Articles XIII C and XIII D "allow[] only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge." (*Riverside, supra*, at p. 682.) Article XIII C imposes restrictions on general and special property taxes in addition to those imposed under article XIII A, and requires voter approval for any general or special tax imposed by a local governmental entity. The second component of Proposition 218, article XIII D, is addressed to "Assessment and Property-Related Fee Reform," and it "undertakes to constrain the imposition by local governments of 'assessments, fees and charges.' (Art. XIII D, § 1.)" (*Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364, 1378 [59 Cal.Rptr.3d 484].) "Article XIII D sets forth procedures, requirements and voter approval mechanisms for local government assessments, fees and charges."[9] (*Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 640 [119 Cal.Rptr.2d 91] (*Roseville*).)

█ For new or increased property assessments, article XIII D requires agencies to obtain an engineer's report on the assessment and mail detailed notice to affected property owners, explaining the reason for and the method of calculating the assessment and identifying the amount chargeable to the owner's particular parcel. (Art. XIII D, § 4, subds. (b), (c).) The notice must provide the date, time, and place of a public hearing on the assessment, include a ballot "whereby the owner may indicate his or her name, reasonable

---

[7] The District does not contest that the charges are subject to Proposition 218, but only disputes Paland's claim that they are assessments rather than fees under the terms of the initiative.

[8] Proposition 13, which was adopted by voters on June 6, 1978, added article XIII A to the California Constitution. (*Knox v. City of Orland* (1992) 4 Cal.4th 132, 140 [14 Cal.Rptr.2d 159, 841 P.2d 144].)

[9] "Fee" and "charge" appear to be synonymous in article XIII D. (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 214, fn. 4 [46 Cal.Rptr.3d 73, 138 P.3d 220] (*Bighorn*).) Hereafter, we use the term "fee" to refer to both.

identification of the parcel, and his or her support or opposition to the proposed assessment," and conspicuously describe the procedures for tabulation of those ballots. (Art. XIII D, § 4, subds. (c), (d).) When tabulated at the public hearing, the ballots are weighted according to the proportional financial obligation of each affected parcel. (Art. XIII D, § 4, subd. (e).) If a majority of the weighted ballots oppose the assessment, it may not be imposed. (*Ibid.*)

██ For new or increased property-related fees, the initiative also requires detailed mailed notice to affected property owners, explaining the proposed fee and announcing a public hearing. (Art. XIII D, § 6, subd. (a)(1).) However, no formal balloting is required at this stage of the process. (*Ibid.*) Instead, "[a]t the public hearing, the agency shall consider all protests against the proposed fee or charge. If written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge." (Art. XIII D, § 6, subd. (a)(2).) If a majority protest does not occur, then, "[e]*xcept for fees or charges for sewer, water, and refuse collection services*," the fee still may not be imposed or increased "unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area." (Art. XIII D, § 6, subd. (c), italics added.)[10]

In short, if the monthly water and sewer base rates charged to Paland were assessments, ballot approval of the base rates was required under article XIII D, section 4. If, however, the base rates are fees, only a majority protest hearing was required because water and sewer (and refuse collection) fees are exempt from the ballot approval requirement for fees set forth in article XIII D, section 6, subdivision (c).

The narrow focus of this dispute is the proper interpretation and application of article XIII D, section 6, subdivision (b)(4), which distinguishes between fees and assessments: "A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements: [¶] . . . [¶] (4) No fee or charge may be imposed for a service unless that service is actually used by, or *immediately available to*, the owner of the property in question. Fees or charges based on potential or future use of a service are not permitted. *Standby charges, whether characterized as*

---

[10] Article XIII D defines fee or charge as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service." (Art. XIII D, § 2, subd. (e).) "Property-related service" is defined as "a public service having a direct relationship to property ownership." (*Id.*, § 2, subd. (h).)

*charges or assessments, shall be classified as assessments and shall not be imposed without compliance with Section 4."* (Art. XIII D, § 6, subd. (b)(4), italics added.)

Paland argues that, despite the existence of a metered connection for water service at his parcel, that service is still not immediately available to him, and to those similarly situated with inactive connections, and therefore the imposition of minimum base rates on such parcels is a standby charge that must be classified as an assessment under article XIII D, section 6, subdivision (b)(4).[11] He asserts that water service[12] is not immediately available to him when his connection is inactive because the District would have to unlock his water meter before he could use the service. Also, he argues the service is not immediately available because the District will not unlock his meter unless he pays his past-due bills. In his view, the service is not immediately available unless he can "twist his tap and turn on the water." If, as Paland contends, the minimum monthly base rate charged by the District is indeed a standby charge, it would unquestionably be subject to article XIII D, section 4 assessment approval procedures. (Art. XIII D, § 5, subd. (a); *Keller v. Chowchilla Water Dist.* (2000) 80 Cal.App.4th 1006, 1012 [96 Cal.Rptr.2d 246] (*Keller*).)

■ Our Supreme Court has also indicated, however, that "domestic water delivery through a pipeline is a property-related service within the meaning of [article XIII D]. ([*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409,] 426–427 [9 Cal.Rptr.3d 121, 83 P.3d 518].) Accordingly, once a property owner . . . has paid the connection charges and has become a customer of a public water agency, all charges for water *delivery* incurred thereafter are charges for a property-related service, whether the charge is

---

[11] Paland also contends that charges for maintenance and operation costs are by definition assessments rather than fees within the meaning of Proposition 218. He cites the definition of "assessments" in the Legislature's statutory implementation of the initiative, which provides: " 'Assessment' means any levy or charge by an agency upon real property that is based upon the special benefit conferred upon the real property by a public improvement or service, *that is imposed to pay* the capital cost of the public improvement, *the maintenance and operation expenses of the public improvement*, or the cost of the service being provided." (§ 53750, subd. (b), italics added.) Similar language appears in the initiative. (See art. XIII D, § 5, subd. (a) [exempting assessments predating Prop. 218 imposed exclusively to finance the capital costs *or maintenance and operation expenses* for water and sewer systems, except for subsequent increases].) These provisions establish that an assessment may be imposed to pay maintenance and operation costs of a public improvement. They do not, however, establish that any levy imposed to pay maintenance and operation costs of a public improvement is necessarily an assessment. As previously noted, article XIII D, section 6, subdivision (b) authorizes agencies to impose fees to cover the cost of providing immediately available water service, which necessarily includes maintenance and operating costs.

[12] The parties focus on water service in their briefs because only water service is metered and thus can be discontinued in a physical sense by having the District lock the meter. We too focus our discussion on the District's water service.

calculated on the basis of consumption or is imposed as a fixed monthly fee." (*Bighorn, supra*, 39 Cal.4th at p. 217, italics added, fn. omitted.) "At least as to fees and charges that are property related, section 6 of California Constitution article XIII D would appear to embody the electorate's intent as to when voter-approval should be required, or not required, before existing fees may be increased or new fees imposed, and the electorate chose not to impose a voter-approval requirement for increases in water service charges." (*Id.* at p. 219.) As a consequence, so long as the water service is immediately available to Paland, it is exempt from the requirement for property owner approval.

As far as we are aware, no published decision has yet directly addressed the precise question before us: how to distinguish between charges for services that are "immediately available" to property owners though not actually used, which are fees under the initiative, and standby charges for "potential or future use of a service," which are defined as assessments. In *Keller*, the court was not presented with the issue because the parties agreed that the charges in dispute were standby charges that are classified as assessments under Proposition 218. (*Keller, supra*, 80 Cal.App.4th at p. 1011.) *Keller* states the charges were "levied on all property capable of receiving water from the District, even if the property owners did not use the District's water," but the opinion does not clarify whether "capable of receiving water" meant that the affected parcels were all already connected to the water's system, could be connected to the water system immediately at the owner's will, or could be connected once construction of the District's water system was completed at some future date. (*Ibid.*; see also *id.* at p. 1009.) In *Bighorn*, the Supreme Court, considering the validity of a voter initiative to reduce domestic water rates and to require voter approval for future increases, held that water delivery rates charged to parcels with connections were fees within the meaning of article XIII D, section 6 regardless of whether they were based on usage or were flat monthly fees used to pay the system's fixed costs. (*Bighorn, supra*, 39 Cal.4th at pp. 216–217 [rejecting argument that rates based on usage were not subject to Prop. 218]; see also *Richmond v. Shasta Community Services Dist., supra*, 32 Cal.4th at pp. 426–427 (*Richmond*) [a public water agency's charges for ongoing water delivery are fees and charges within the meaning of art. XIII D].) Similarly, in *Roseville*, the Third Appellate District held that charges imposed on parcels with connections to the agency's water and sewer systems irrespective of use were fees within the meaning of article XIII D, section 6. (*Roseville, supra*, 97 Cal.App.4th at pp. 642–645 [rejecting an argument that the fees were not subject to Prop. 218].) None of these cases considered inactive connections, or what constituted an immediately available service.

■ "When interpreting a provision of our state Constitution, our aim is 'to determine and effectuate the intent of those who enacted the constitutional

provision at issue.' [Citation.] When, as here, the voters enacted the provision, their intent governs. [Citation.] To determine the voters' intent, 'we begin by examining the constitutional text, giving the words their ordinary meanings.' [Citation.]" (*Bighorn, supra,* 39 Cal.4th at p. 212.) We turn to the purpose of the initiative to clarify the voters' intent. (Art. XIII D, § 6, subd. (b)(4); see *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 448 [79 Cal.Rptr.3d 312, 187 P.3d 37] [Prop. 218 states that it should be liberally construed to effectuate its purposes].) The Supreme Court has explained that "Proposition 218 was designed to: constrain local governments' ability to impose assessments; place extensive requirements on local governments charging assessments; shift the burden of demonstrating assessments' legality to local government; make it easier for taxpayers to win lawsuits; and limit the methods by which local governments exact revenue from taxpayers without their consent." (*Silicon Valley Taxpayers' Assn., Inc., supra,* at p. 448.) To achieve these purposes, the initiative imposed both procedural (art. XIII D, §§ 4, subds. (a)–(e), 6, subds. (a), (c)) and substantive (*id.,* §§ 4, subd. (f), 6, subd. (b)) constraints on assessments and property-related fees.

The terms "immediately available" and "potential or future use of a service" as used in the initiative are relative and inherently imprecise. Construed narrowly, service is "immediately available" only if, as Paland suggests, water flows out of a faucet when the property owner turns on the tap. However, voters might reasonably have intended "immediately available" to include circumstances where the District has provided utility connections directly to the owner's parcel and the service is "immediately available" subject only to the volitional decision of the property owner to request service.

■ In the context of the entire initiative, the requirement that fees be imposed only for service that is "actually used . . . or immediately available" is best understood as a substantive constraint on the agency and the purposes for which the agency acts. An assessment is "a charge on land[, and] is commonly reflected in its being secured by a lien on the charged property." (*Pajaro Valley Water Management Agency v. Amrhein, supra,* 150 Cal.App.4th at p. 1382, italics omitted; see § 53931.) *Assessments* for water and sewer services must be justified by an engineer's report and submitted to a weighted vote of affected property owners. (Art. XIII D, § 4.) *Fees* for water and sewer services (and refuse collection services) may be imposed after notice and a public hearing, and are specifically exempted from the requirement for a property owner vote. (Art. XIII D, § 6.) They are not automatically liens, but become a lien on the owner's property only at the option of the district when delinquent and a certificate of delinquency is recorded. (§ 61115, subd. (c).) This scheme suggests that voters perceived a greater danger of government abuse in the imposition of water (and sewer) related assessments imposed on

real property than in the imposition of fees, and also recognized the need for agencies to determine rates for such services, allowing the agency to provide for necessary continuing operation and maintenance of the systems without the undue burden of potential owner veto. We conclude that this difference is also reflected in the additional *substantive* constraint on fees contained within article XIII D, section 6, subdivision (b), which bars agencies from using fees to extract revenue that is not immediately translated into tangible service to the property owner.[13]

■ We conclude the "immediately available" requirement is logically focused on the agency's conduct, not the property owner's. As long as the agency has provided the necessary service connections at the charged parcel and it is only the unilateral act of the property owner (either in requesting termination of service or failing to pay for service) that causes the service not to be actually used, the service is "immediately available" and a charge for the service is a fee rather than an assessment (assuming the other substantive requirements of a fee are satisfied).

■ Here Paland long ago paid the connection charges and became a customer of the District, with water and sewer services provided through pipes physically connected to the property. He cannot contend that the services are not available to him, because quite evidently they have been available at all times he has chosen to use them. The District can and will immediately turn on water service to Paland's property once Paland requests that the service be renewed and satisfies any delinquency. Any lack of immediacy in this process is due solely to circumstances within his control.

A contrary conclusion would lead to an anomalous result whereby an individual property owner could unilaterally preclude collection of his or her pro rata obligation for the maintenance and operation of a utility system absent an owner vote, while the owner of an adjacent parcel with an active connection would have no such option. Further, such an argument, which would divorce the base rates imposed on parcels with *inactive* connections from the base rates imposed on parcels with active connections would take the former rates outside of Proposition 218 altogether, thus undermining rather than assisting Paland's case. In *Richmond*, in deciding that a water connection charge was not subject to Proposition 218 requirements, the

---

[13] Article XIII D, section 6, subdivision (b) states, "Requirements for Existing, New or Increased Fees and Charges. A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements: [¶] (1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service. [¶] (2) Revenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed. [¶] (3) The amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel. . . ."

Supreme Court held that in order for a charge to be either an assessment or fee within the meaning of Proposition 218, it must apply to parcels that can be identified in advance. (*Richmond, supra,* 32 Cal.4th at pp. 418–419, 427–428; see also *Bighorn, supra,* 39 Cal.4th at pp. 208–209 [recognizing conclusion in *Richmond* that "connection charges were not 'assessments' or 'property-related fees or charges' within the meaning of article XIII D"].) Both section 4 and section 6 of article XIII D require agencies to identify affected parcels in advance of imposing an assessment or a fee for purposes of providing notice and conducting the required voter approval procedures. (*Richmond,* at pp. 418–419, 427–428.) Because the decision to discontinue water service is a voluntary act by the property owner that cannot be anticipated by the District, parcels affected by a fee that specifically applied to parcels with *inactive connections* could not be fully identified in advance and the fee would not be covered by Proposition 218 at all.

Paland also makes an argument that his payment of a $1,800 connection fee in 1986 gave him a contractual right to access to the water and sewer systems and that he cannot be charged additional fees for maintenance or operation of the system unless he further burdens the system by actual use, or unless voters approve an assessment. He cites no evidence or authority supporting his contract theory.[14] Nor does he cite statutory or other legal authority barring the District from charging him for maintenance, operation, and capital improvements to the existing systems once he has paid a connection fee. Both Proposition 218 and the Government Code authorize the District to do just that. (Art. XIII D, § 6, subd. (b)(1)–(4); § 66013, subd. (b)(3) [authorizing capacity charges].) Common sense dictates that continuous maintenance and operation of the water and sewer systems is necessary to keep those systems immediately available to inactive connections like Paland's. As a practical matter, it would be difficult if not impossible for an agency to forecast the costs of operating and maintaining a system into the indefinite future for the purpose of charging all users their proportional share of those costs at the time they first connect to the system.

In sum, we conclude the water and sewer base rates imposed on parcels with water or sewer connections regardless of whether they are active or inactive, and whether or not the property owner uses the services, are fees subject to the provisions of article XIII D, section 6, not assessments subject to the requirements of article XIII D, section 4. Paland does not argue that the

---

[14] Paland cites a dissenting opinion for the principle that a municipal utility may not charge property owners for capital improvements that were already financed by the ratepayers or were donated to the utility. (*Hansen v. City of San Buenaventura* (1986) 42 Cal.3d 1172, 1191, 1194–1195 [233 Cal.Rptr. 22, 729 P.2d 186] (dis. opn. of Broussard, J.).) This dissenting opinion is neither binding authority nor relevant to the issues before us. Paland presents no evidence that the capital improvements being financed by current base rates were already funded by the connection fee he paid in 1986.

District failed to comply with the requirements of article XIII D, section 6. Therefore, his Proposition 218 argument fails. In light of this dispositive conclusion, it is unnecessary for us to address Paland's other arguments.[15]

DISPOSITION

The judgment is affirmed. Paland shall pay the District's costs on appeal.

Simons, Acting P. J., and Needham, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 10, 2010, S178708.

---

[15] Paland argues that the trial court erred by dismissing a portion of his complaint on statute of limitations grounds, makes a related procedural due process argument, and contends the trial court erred in not issuing a formal statement of decision, in misallocating the burden of proof, and in excluding evidence.