[No. S127535. July 24, 2006.]

BIGHORN-DESERT VIEW WATER AGENCY, Plaintiff, Cross-defendant and Respondent, v.
KARI VERJIL, as Registrar of Voters, etc., Defendant and Cross-defendant;
E. W. KELLEY, Real Party in Interest, Cross-complainant and Appellant.

## Counsel

Sweeney, Davidian, Green & Grant, Eric Grant and James F. Sweeney for Real Party in Interest, Cross-complainant and Appellant.

Nick Bulaich as Amicus Curiae on behalf of Real Party in Interest, Cross-complainant and Appellant.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Real Party in Interest, Cross-complainant and Appellant.

Harold Griffith as Amicus Curiae on behalf of Real Party in Interest, Cross-complainant and Appellant.

Lagerlof, Senecal, Bradley, Gosney & Kruse, Timothy J. Gosney and James D. Ciampa for Plaintiff, Cross-defendant and Respondent.

McCormick, Kidman & Behrens, Janet Morningstar; Daniel S. Hentschke; Colantuono & Levin, Michael G. Colantuono; Alisa Renee Fong; Ruth Sorensen; and Jennifer B. Henning for Association of California Water Agencies, League of California Cities and California State Association of Counties as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

No appearance for Defendant and Cross-defendant.

## Opinion

**KENNARD, J.**—In November 1996, California voters adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution. In *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409 [9 Cal.Rptr.3d 121, 83 P.3d 518] (*Richmond*), we construed article XIII D as it applies to fees that a local public water district charged for making new service connections to its domestic water delivery system. We concluded that those connection charges were not "assessments" or "property-related fees or

charges" within the meaning of article XIII D. (*Richmond, supra,* at pp. 425, 428.)

Here, we consider a related issue, one that involves section 3 of article XIII C, which provides that "the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge." Does this provision grant local voters authority to adopt an initiative measure that would reduce a local public water district's charges for delivering domestic water to existing customers and that also would require voter preapproval for any future increase in those charges or for the imposition of any new charge?

■ As explained below, we conclude that section 3 of article XIII C grants local voters a right to use the initiative power to reduce the rate that a public water district charges for domestic water. We also conclude, however, that this new constitutional provision does not grant local voters a right to impose a voter-approval requirement on all future adjustments of water delivery charges, and that the proposed initiative at issue here was properly withheld from the ballot because it included a provision to impose such a requirement.

# I

In 1969, the California Legislature formed the Bighorn-Desert View Water Agency (Agency) as a special district under the Bighorn Mountains Water Agency Law.[1] (Stats. 1969, ch. 1175, § 1, p. 2273 et seq.) The Agency provides domestic water service to residents in a roughly 42-square-mile area north of Yucca Valley in San Bernardino County.

E. W. Kelley is a resident of San Bernardino County and the proponent of a local initiative measure to reduce the Agency's water rate and other charges. Kelley's initiative proposed to reduce the Agency's water rate from $4.00 to $2.00 per 100-cubic-foot billing unit,[2] to reduce the "non-cap recovery charge" from $4.65 to $2.50 per month, and to reduce the "MWA

---

[1] The Agency was formed under the name Bighorn Mountains Water Agency and acquired its current name after consolidation in 1989 with Desert View Water District. (See Wat. Code, §§ 33300–33306; Stats. 1989, ch. 570, § 3, p. 1878, 73B West's Ann. Wat.-Appen. (1995 ed.) ch. 112, p. 189.)

[2] Although the Agency's water rate was $4.00 per 100-cubic-foot billing unit when the initiative was circulated for signatures, it was scheduled to be reduced to $2.30 per billing unit in June 2003. Thus, one could argue, as Kelley has, that the actual reduction proposed by the initiative was not from $4.00 to $2.00, but from $2.30 to $2.00 per billing unit. We need not resolve this dispute.

pipeline charge" from $13.62 to $11.50 per month. The initiative also would have required the Agency to obtain voter approval before increasing any existing water rate, fee, or charge, or imposing any new water rate, fee, or charge.

Kelley succeeded in qualifying the initiative for the ballot. On October 24, 2002, Sharon Beringson, as the Interim Registrar of Voters for San Bernardino County, certified the initiative, and the next day by letter she informed the Agency of its duty under Elections Code section 9310 to either adopt the initiative or submit it to the voters at a special election. The Agency did neither, however. Instead, on November 20, 2002, it filed a complaint for declaratory relief in the superior court, naming Beringson as the defendant and Kelley as the real party in interest.

In the complaint, the Agency asked the court to declare the initiative impermissible under California law, and beyond the power of the Agency's electorate to enact, because it would interfere with the statutory responsibility of the Agency's board of directors to set the water rate high enough to cover its costs. (See Stats. 1969, ch. 1175, § 25, pp. 2285–2286, 72B West's Ann. Wat.-Appen., *supra*, ch. 112, p. 203 ["The board of directors, so far as practicable, shall fix such rate or rates for water in the agency . . . as will result in revenues which will pay the operating expenses of the agency, . . . provide for repairs and depreciation of works, provide a reasonable surplus for improvements, extensions, and enlargements, pay the interest on any bonded debt, and provide a sinking or other fund for the payment of the principal of such debt as it may become due."].)

Kelley answered the complaint and filed a motion for judgment on the pleadings and a cross-petition for writ of mandate seeking to compel the Agency to either adopt the initiative as an ordinance or submit it to the voters at a special election. Asserting that the Agency was challenging the legality of the proposed initiative both on its face (insofar as it asserted that its board of directors had the exclusive power to set the agency's water rates and charges) and as applied (insofar as it asserted that the particular rates and charges that the initiative would set would leave the Agency with insufficient net revenues), Kelly argued that the as-applied challenge could not be raised before the election and that the facial challenge failed because the initiative was authorized and protected by section 3 of article XIII C of the California Constitution. In its opposition to Kelley's motion for judgment on the pleadings, the Agency argued, essentially, that it was raising only a facial challenge to the proposed initiative.

At the hearing on the motion for judgment on the pleadings, the parties agreed that the only issue was the validity of the initiative on its face, that the facts relevant to that issue were undisputed, and that the issue could be decided as a matter of law. The trial court, declaring that voters in the area served by the Agency lacked power to affect its water rates and fees and charges, denied Kelley's motion and cross-petition and entered a judgment of declaratory relief for the Agency.

Kelley appealed the judgment to the Court of Appeal, arguing that his initiative was authorized by article XIII C, section 3 of the California Constitution. The Court of Appeal affirmed the superior court's ruling, and Kelley petitioned this court for review. We granted review and then transferred the case back to the Court of Appeal with directions to vacate its decision and to reconsider the issues in light of *Richmond, supra,* 32 Cal.4th 409.

The Court of Appeal again found in favor of the Agency, holding that article XIII C did not authorize Kelley's initiative because the initiative did not deal with special or general taxes, which the Court of Appeal held to be the only subject matter article XIII C covers. The court held that the Agency's rate, fees, and charges were not subject to Proposition 218, and thus could not be reduced by voter initiative. Kelley again petitioned this court for review, which we again granted.

## II

Article XIII C of the California Constitution is entitled Voter Approval for Local Tax Levies. Section 1 of article XIII C defines the terms " '[g]eneral tax,' " " '[s]pecial tax,' " " '[l]ocal government,' " and " '[s]pecial district.' " Section 2 of article XIII C provides, in subdivision (b), that "[n]o local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote," and it provides, in subdivision (d), that "[n]o local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." Section 3, the provision at issue here, states: "Initiative Power for Local Taxes, Assessments, Fees and Charges. Notwithstanding any other provision of this Constitution, including, but not limited to, Sections 8 and 9 of Article II, the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing *any local tax, assessment, fee or charge.* The power of initiative to affect *local taxes, assessments, fees and charges* shall be applicable to all local govern-

ments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives."[3] (Italics added.)

With a single sentence, the Court of Appeal rejected Kelley's reliance on article XIII C as authority for the proposed initiative. The Court of Appeal stated: "Article XIII C governs special and general taxes, which are not at issue here." Kelley argues that this statement is erroneous because section 3 of article XIII C is not limited to special and general taxes, but applies by it terms to "any local tax, assessment, fee or charge."

When interpreting a provision of our state Constitution, our aim is "to determine and effectuate the intent of those who enacted the constitutional provision at issue." (*Richmond, supra,* 32 Cal.4th at p. 418.) When, as here, the voters enacted the provision, their intent governs. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) To determine the voters' intent, "we begin by examining the constitutional text, giving the words their ordinary meanings." (*Richmond, supra,* at p. 418.)

Article XIII C, section 3 of the California Constitution expressly states that the initiative power cannot be limited or prohibited when an initiative proposes to reduce or repeal "any local tax, assessment, fee or charge." In construing a constitutional or statutory provision, " ' "[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." ' " (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) If possible, therefore, we must give significance to the words "assessment, fee or charge" in article XIII C, section 3, as meaning something other than "local tax." Accordingly, it would appear that article XIII C, section 3, is not limited to local special and general taxes but applies also to assessments, fees, and charges.

In the ballot pamphlet for the election at which Proposition 218 (which included both article XIII C and article XIII D) was adopted, the Legislative Analyst gave this description of how Proposition 218 would affect initiative powers: "The measure states that Californians have the power to repeal or

---

[3] In section 9 of article II, the state Constitution defines "referendum" as "the power of the electors to approve or reject statutes or parts of statutes *except . . . statutes providing for tax levies . . . .*" (Cal. Const., art. II, § 9, subd. (a), italics added.) Under this definition, tax measures are exempt from referendum. (See *Rossi v. Brown* (1995) 9 Cal.4th 688, 697 [38 Cal.Rptr.2d 363, 889 P.2d 557].) But the state Constitution imposes no similar limitation on the initiative. (See *id.* at pp. 699–705.)

reduce any local tax, assessment, or fee through the initiative process." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by Legis. Analyst, p. 74.) Thus, the Legislative Analyst appears to have also read section 3 of article XIII C as applying to fees as well as to special and general taxes and so described it to the voters who enacted it. (See *People v. Birkett* (1999) 21 Cal.4th 226, 243–244 [87 Cal.Rptr.2d 205, 980 P.2d 912] [argument and analyses in official ballot pamphlet may be consulted to determine voters' understanding and intent].)

■ Because the Agency offers no argument in support of the Court of Appeal's assertion that article XIII C applies only to special and general taxes, and not to fees, we will not belabor the point. We conclude that article XIII C, section 3, applies to assessments, fees, and charges and not just to special and general taxes.

Are the amounts that the Agency bills its customers for the delivery of domestic water properly characterized as fees or charges within the meaning of those words in article XIII C, section 3? Although article XIII C contains definitions of the terms "general tax" and "special tax" (Cal. Const., art. XIII C, § 1, subds. (a), (d)), it does not define the terms "fee" or "charge." Article XIII D, which was enacted together with article XIII C as part of Proposition 218, does contain a definition of those terms. According to that definition, " '[f]ee' or 'charge' means any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Cal. Const., art. XIII D, § 2, subd. (e).) It is unclear, however, whether that definition governs the meaning of the terms "fee" and "charge" in article XIII C, section 3.

■ Section 2 of article XIII D of the state Constitution, which contains definitions for various terms, including "fee" and "charge," begins with the words, "As used *in this article*." (Italics added.) Therefore, although the definitions in section 2 of article XIII D govern the meaning of the defined terms in article XIII D (see *People v. Canty* (2004) 32 Cal.4th 1266, 1277 [14 Cal.Rptr.3d 1, 90 P.3d 1168]; *Richmond, supra,* 32 Cal.4th at p. 423), those definitions do not *necessarily* apply outside of article XIII D and, in particular, in article XIII C. On the other hand, when a word has been used in different parts of a single enactment, courts normally infer that the word was intended to have the same meaning throughout. (*People v. Roberge* (2003) 29 Cal.4th 979, 987 [129 Cal.Rptr.2d 861, 62 P.3d 97].) Because article XIII C and article XIII D were enacted together by Proposition 218, it seems

unlikely that the terms "fee" and "charge" were meant to carry *entirely* different meanings in those two articles, although some variation in meaning is possible.[4]

We considered a related question in *Richmond, supra,* 32 Cal.4th 409. At issue there was whether a water service connection fee was a fee or charge within the meaning of article XIII D's definition of the terms "fee" and "charge" as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, *including a user fee or charge for a property related service.*" (Cal. Const., art. XIII D, § 2, subd. (e), italics added; see *Richmond, supra,* at p. 415.) Of relevance here, we stated:

"In the ballot pamphlet for the election at which article XIII D was adopted, the Legislative Analyst stated that '[f]ees for water, sewer, and refuse collection service probably meet the measure's definition of property-related fee.' (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by Legis. Analyst, p. 73.) The Legislative Analyst apparently concluded that water service has a direct relationship to property ownership, and thus is a property-related service within the meaning of article XIII D because water is indispensable to most uses of real property; because water is provided through pipes that are physically connected to the property; and because a water provider may, by recording a certificate, obtain a lien on the property for the amount of any delinquent service charges (see Gov. Code, §§ 61621, 61621.3). . . .

"Several provisions of article XIII D tend to confirm the Legislative Analyst's conclusion that charges for utility services such as electricity and water should be understood as charges imposed 'as an incident of property ownership.' For example, subdivision (b) of section 3 provides that 'fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership' under article XIII D. Under the rule of construction that the expression of some things in a statute implies the exclusion of other things not expressed (*In re Bryce C.* (1995) 12 Cal.4th 226, 231 [48 Cal.Rptr.2d 120, 906 P.2d 1275]), the expression that electrical and gas service charges are not within the category of property-related fees implies that similar charges for other utility services, such as water and sewer, are property-related fees subject to the restrictions of article XIII D.

---

[4] Because article XIII D provides a single definition that includes both "fee" and "charge," those terms appear to be synonymous in both article XIII D and article XIII C. This is an exception to the normal rule of construction that each word in a constitutional or statutory provision is assumed to have independent significance. (*DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at p. 388.) We use the terms interchangeably in this opinion.

"This implication is reinforced by subdivision (c) of article XIII D, section 6, which expressly excludes 'fees or charges for sewer, water, and refuse collection services' from the voter approval requirements that article XIII D imposes on property-related fees and charges. Because article XIII D does not include similar express exemptions from the other requirements that it imposes on property-related fee[s] and charges, the implication is strong that fees for water, sewer, and refuse collection services are subject to those other requirements. (See *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 645 [119 Cal.Rptr.2d 91] [reaching the same conclusion].)

"Thus, we agree that water service fees, being fees for property-related services, may be fees or charges within the meaning of article XIII D. But we do not agree that *all* water service charges are necessarily subject to the restrictions that article XIII D imposes on fees and charges. Rather, we conclude that a water service fee is a fee or charge under article XIII D if, but only if, it is imposed 'upon a person as an incident of property ownership.' (Art. XIII D, § 2, subd. (e).)" (*Richmond, supra,* 32 Cal.4th at pp. 426–427.)

For purposes of identifying fees and charges under California Constitution article XIII D, we drew a distinction between water service connection charges and charges for ongoing water delivery. We explained: "A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property. But a fee for making a new connection to the system is not imposed 'as an incident of property ownership' because it results from the owner's voluntary decision to apply for the connection." (*Richmond, supra,* 32 Cal.4th at p. 427.)

Comparing the provisions of article XIII C and article XIII D, it appears to us that the words "fee" and "charge," which appear in both articles, may well have been intended to have a narrower, more restrictive meaning in article XIII D. The title of article XIII D is Assessment and *Property-Related* Fee Reform (italics added) and section 6 of article XIII D, which imposes restrictions on fees, is titled *Property Related* Fees and Charges (italics added). Consistent with these references to "property-related" fees, article XIII D's definition of "fee" requires that it be imposed "upon a parcel or upon a person as an incident of property ownership." (Cal. Const., art. XIII D, § 2, subd. (e).) By comparison, the words "property related" do not appear anywhere in article XIII C, nor does anything in the text of article XIII C suggest that it is limited to levies imposed on real property or on persons as an incident of property ownership. Thus, the terms "fee" and "charge" in section 3 of article XIII C may not be subject to the "property-related" qualification that was at issue in *Richmond, supra,* 32 Cal.4th 409. At the same time, any levy that

qualifies as a property-related fee or charge under article XIII D must also qualify as a "fee" or "charge" under article XIII C, section 3. Nothing in the text of article XIII C, or in the ballot pamphlet for the November 1996 general election at which it was adopted, suggests an intent to *exclude* property-related fees and charges from the reach of section 3 of article XIII C, or to impose any separate or additional restriction on the meaning of "fee" or "charge" as used in article XIII C.

Thus, it is possible that California Constitution article XIII C's grant of initiative power extends to some fees that, because they are not property related, are not fees within the meaning of article XIII D. But we perceive no basis for excluding from article XIII C's authorization any of the fees subject to article XIII D. The absence of a restrictive definition of "fee" or "charge" in article XIII C suggests that those terms include all levies that are ordinarily understood to be fees or charges, including all of the property-related fees and charges subject to article XIII D.

■ For present purposes, it is unnecessary to arrive at an exact definition of the terms "fee" and "charge" as used in article XIII C. It is sufficient to conclude that a public water agency's charges for ongoing water delivery, which are fees and charges within the meaning of article XIII D (*Richmond, supra,* 32 Cal.4th at pp. 426–427), are also fees within the meaning of section 3 of article XIII C. Therefore, section 3 of article XIII C establishes that the initiative power "shall not be prohibited or otherwise limited in matters of reducing or repealing" a public agency's water delivery charges. In other words, this constitutional provision expressly authorizes initiative measures like Kelley's insofar as they seek to reduce or repeal a public agency's water rates and other water delivery charges.

The Agency urges us to draw a distinction between water delivery charges that are "consumption based" (calculated according to the quantity of water delivered) and charges that are imposed regardless of water usage. Under this proposed distinction, the Agency's water rate, which is a charge per 100 cubic feet of water, is a consumption-based charge, while its "non-cap recovery charge" and "MWA Pipeline charge" (both of which the Agency imposes in a fixed amount per month per customer) are not. The Agency argues that consumption-based water charges are not fees or charges within the meaning of article XIII D because they are not imposed "as an incident of property ownership" (Cal. Const., art. XIII D, § 2, subd. (e)), but instead as a result of the voluntary decisions of each water customer as to how much water to use. We are not persuaded.

■ Article XIII D defines "fee" or "charge" as "*including* a user fee or charge for a property related service." (Cal. Const., art. XIII D, § 2, subd. (e),

italics added.) The word "including" is " 'ordinarily a term of enlargement.' " (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 [3 Cal.Rptr.3d 623, 74 P.3d 726].) As we explained in *Richmond, supra,* 32 Cal.4th 409, domestic water delivery through a pipeline is a property-related service within the meaning of this definition. (*Id.* at pp. 426–427.) Accordingly, once a property owner or resident has paid the connection charges and has become a customer of a public water agency, all charges for water delivery incurred thereafter are charges for a property-related service, whether the charge is calculated on the basis of consumption or is imposed as a fixed monthly fee.[5] Consumption-based water delivery charges also fall within the definition of user fees, which are "amounts charged to a person using a service where the amount of the charge is generally related to the value of the services provided." (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 957 [5 Cal.Rptr.3d 520].) Because it is imposed for the property-related service of water delivery, the Agency's water rate, as well as its fixed monthly charges, are fees or charges within the meaning of article XIII D, and thus, for the reasons we have explained, they are also fees or charges within the meaning of section 3 of article XIII C. Under the constitutional grant of power in section 3 of article XIII C, the initiative may be used to reduce each of those water delivery charges.

The Agency also argues that even if its water rate and other water delivery charges are fees or charges within the meaning of section 3 of article XIII C of the California Constitution, Kelley's initiative is nonetheless invalid because the Legislature has granted the Agency's governing board exclusive authority to set the Agency's rate and other charges. (See *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775–777 [38 Cal.Rptr.2d 699, 889 P.2d 1019] [discussing exclusive delegation]; *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 511 [247 Cal.Rptr. 362, 754 P.2d 708] [same].) The Legislature is bound by the state Constitution, however, and the evident purpose of article XIII C is to extend the local initiative power to fees and charges imposed by local public agencies. We need not determine whether the Legislature intended to preclude the use of the initiative to reduce the Agency's fees because even if it did so intend, the Legislature's authority in enacting the statutes under which the Agency operates must in this instance yield to constitutional command.

To this point we have considered only the portions of Kelley's initiative that would reduce the Agency's water delivery charges. Kelley's initiative measure would do more than roll back the Agency's water rate and other charges, however. It would also require the Agency's board of directors to

---

[5] *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 85 Cal.App.4th 79 [101 Cal.Rptr.2d 905], which was decided before *Richmond, supra,* 32 Cal.4th 409, is disapproved insofar as it is inconsistent with this conclusion.

obtain voter approval before increasing any existing rate or charge or imposing any new rate or charge. Nothing in section 3 of California Constitution article XIII C authorizes initiative measures that impose voter-approval requirements for future increases in fees or charges.

■ Arguing to the contrary, Kelley points to the reference in section 3 of article XIII C to "[t]he power of initiative to *affect* local taxes, assessments, fees and charges." (Italics added.) He asserts that by imposing a voter-approval requirement on future increases in water delivery charges, his initiative would "affect" those charges and therefore is within the constitutional grant of initiative power. We disagree. The entire sentence reads: "The power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments and neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives." (Cal. Const., art. XIII C, § 3.) The evident purpose of this sentence is not to define how the initiative may be used to impact fees and charges, but instead to specify that the initiative power extends to charges imposed by all local public agencies and that the signature requirement applied to statewide initiatives may not be exceeded. The scope of the initiative power is set by the previous sentence, stating that "the initiative power shall not be prohibited or otherwise limited *in matters of reducing or repealing* any local tax, assessment, fee or charge." (*Ibid.*, italics added.) Thus, analysis of the text of section 3 of article XIII C supports the conclusion that the initiative power granted by that section extends only to "reducing or repealing" taxes, assessments, fees, and charges.

■ That the voters who enacted Proposition 218 did not intend to authorize initiative measures imposing voter-approval requirements on future water delivery charge increases is confirmed by an examination of section 6 of California Constitution article XIII D. Related provisions "should be read together and construed in a manner that gives effect to each, yet does not lead to disharmony with the others." (*City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034]; see also *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 248 [127 Cal.Rptr.2d 177, 57 P.3d 654]; *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906]; *DeVita v. County of Napa, supra,* 9 Cal.4th at p. 778; *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) Article XIII D, section 6, subdivision (c), says that "[e]*xcept for fees or charges for* sewer, *water,* and refuse collection services, no property related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area." (Italics added.) Thus, article XIII D

expressly exempts water service charges from the voter-approval requirement that it imposes on all other fees and charges.

■ At least as to fees and charges that are property related, section 6 of California Constitution article XIII D would appear to embody the electorate's intent as to when voter-approval should be required, or not required, before existing fees may be increased or new fees imposed, and the electorate chose not to impose a voter-approval requirement for increases in water service charges. Although this provision does not expressly prohibit local initiatives that would impose such a requirement, neither does it authorize them. The provisions of article XIII C support a similar conclusion. Although section 2 of article XIII C imposes voter-approval requirements for general taxes and for special taxes, nothing in article XIII C imposes a voter-approval requirement for fees or charges.

Kelley has asserted no authority other than section 3 of California Constitution article XIII C for the portion of his initiative that would require voter approval before any future increase in water delivery charges, and we have concluded that article XIII C does not authorize that provision. Kelley apparently concedes that in the absence of the authority granted by section 3 of article XIII C, the exclusive delegation rule (*DeVita v. County of Napa, supra,* 9 Cal.4th at pp. 775–777; *Committee of Seven Thousand v. Superior Court, supra,* 45 Cal.3d at p. 511) bars initiative measures that infringe on the power of the Agency's governing board to set its water delivery rate and charges. Accordingly, we agree with the Court of Appeal that Kelley's initiative is invalid insofar as it seeks to impose a voter-approval requirement on future actions by the Agency's board of directors to increase the existing water rate and other charges or to impose new charges.

■ To some extent, this portion of the initiative is superfluous, because under Elections Code section 9323[6] voter approval is required before a local district's governing board may amend an ordinance adopted by initiative, unless the ordinance provides otherwise. (See *DeVita v. County of Napa, supra,* 9 Cal.4th at p. 788 [discussing similar statute for county ordinance]; *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 40–41 [41 Cal.Rptr.2d 393] [discussing similar statute for city ordinance].) Therefore, if the voters were to approve an initiative lowering the Agency's water rate or other charge, the Agency's governing board would need voter approval before it could change the rate or charge

---

[6] That section reads: "No ordinance proposed by initiative petition and adopted either by the district board without submission to the voters or adopted by the voters shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance. In all other respects, an ordinance proposed by initiative petition and adopted shall have the same force and effect as any ordinance adopted by the board." (Elec. Code, § 9323.)

that had been set by initiative. The Agency's governing board would not need voter approval, however, to increase a charge that was not affected by initiative or to impose an entirely new charge.

We have concluded that under section 3 of California Constitution article XIII C, local voters by initiative may reduce a public agency's water rate and other delivery charges, but also that section 3 of article XIII C does not authorize an initiative to impose a requirement of voter preapproval for future rate increases or new charges for water delivery. In other words, by exercising the initiative power voters may decrease a public water agency's fees and charges for water service, but the agency's governing board may then raise other fees or impose new fees without prior voter approval. Although this power-sharing arrangement has the potential for conflict, we must presume that both sides will act reasonably and in good faith, and that the political process will eventually lead to compromises that are mutually acceptable and both financially and legally sound. (See *DeVita v. County of Napa, supra,* 9 Cal.4th at pp. 792–793 ["We should not presume . . . that the electorate will fail to do the legally proper thing."].) We presume local voters will give appropriate consideration and deference to a governing board's judgments about the rate structure needed to ensure a public water agency's fiscal solvency, and we assume the board, whose members are elected (see Stats. 1969, ch. 1175, § 5, p. 2274, 72B West's Ann. Wat.-Appen., *supra,* ch. 112, p. 190), will give appropriate consideration and deference to the voters' expressed wishes for affordable water service. The notice and hearing requirements of subdivision (a) of section 6 of California Constitution article XIII D[7] will facilitate communications between a public water agency's board and its customers, and the substantive restrictions on property-related charges in

---

[7] "(a) Procedures for New or Increased Fees and Charges. An agency shall follow the procedures pursuant to this section in imposing or increasing any fee or charge as defined pursuant to this article, including, but not limited to, the following:

"(1) The parcels upon which a fee or charge is proposed for imposition shall be identified. The amount of the fee or charge proposed to be imposed upon each parcel shall be calculated. The agency shall provide written notice by mail of the proposed fee or charge to the record owner of each identified parcel upon which the fee or charge is proposed for imposition, the amount of the fee or charge proposed to be imposed upon each, the basis upon which the amount of the proposed fee or charge was calculated, the reason for the fee or charge, together with the date, time, and location of a public hearing on the proposed fee or charge.

"(2) The agency shall conduct a public hearing upon the proposed fee or charge not less than 45 days after mailing the notice of the proposed fee or charge to the record owners of each identified parcel upon which the fee or charge is proposed for imposition. At the public hearing, the agency shall consider all protests against the proposed fee or charge. If written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge." (Cal. Const., art. XIII D, § 6, subd. (a).)

subdivision (b) of the same section[8] should allay customers' concerns that the agency's water delivery charges are excessive.

In holding that section 3 of article XIII C of the state Constitution authorizes initiative measures that reduce public agency water service charges, we are not holding that the authorized initiative power is free of all limitations. In particular, we are not determining whether the electorate's initiative power is subject to the statutory provision requiring that water service charges be set at a level that "will pay the operating expenses of the agency, . . . provide for repairs and depreciation of works, provide a reasonable surplus for improvements, extensions, and enlargements, pay the interest on any bonded debt, and provide a sinking or other fund for the payment of the principal of such debt as it may become due." (Stats. 1969, ch. 1175, § 25, p. 2286, 72B West's Ann. Wat.-Appen., *supra,* ch. 112, p. 203.) That issue is not currently before us.

## III

We have concluded that Kelley's initiative is invalid insofar as it seeks to require voter approval before the Agency's governing board may increase water service charges or impose new charges. When a significant part of a proposed initiative measure is invalid, the measure may not be submitted to the voters. (*American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 715–716 [206 Cal.Rptr. 89, 686 P.2d 609]; *City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 105–106 [248 Cal.Rptr. 290].) Accordingly, the trial court correctly determined that the initiative

---

[8] "(b) Requirements for Existing, New or Increased Fees and Charges. A fee or charge shall not be extended, imposed, or increased by any agency unless it meets all of the following requirements:

"(1) Revenues derived from the fee or charge shall not exceed the funds required to provide the property related service.

"(2) Revenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed.

"(3) The amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel.

"(4) No fee or charge may be imposed for a service unless that service is actually used by, or immediately available to, the owner of the property in question. Fees or charges based on potential or future use of a service are not permitted. Standby charges, whether characterized as charges or assessments, shall be classified as assessments and shall not be imposed without compliance with Section 4.

"(5) No fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners." (Cal. Const., art. XIII D, § 6, subd. (b).)

could not be placed on the ballot, and it properly granted judgment for the Agency, and the Court of Appeal correctly affirmed the trial court's judgment, although its reasoning differed substantially from the reasoning we use here.

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.