Filed 6/23/22  Miner's Camp v. Foresthill Public Utility Dist. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MINER'S CAMP, LLC,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FORESTHILL PUBLIC UTILITY DISTRICT,<br><br>Defendant and Appellant. | C088828<br><br>(Super. Ct. No. SCV0039661) |

Foresthill Public Utility District (District) provides water service to customers in

1

the unincorporated community of Foresthill, California.  In 2014, the District provided notice of a public hearing to consider water rate increases.  There were 242 written protests to the proposed rate increases but the protests did not constitute a majority of the identified parcel owners affected, and the District approved the rate increases following the public hearing.

Miner's Camp, LLC (Miner's Camp) acquired properties served by the District in 2015.  Miner's Camp sent an objection to the District that it was being charged as if multiple water meters served its properties when in fact each property was served by only one water meter.  Miner's Camp subsequently presented a government claim to the District.  The District rejected the claim, and Miner's Camp filed suit against the District, alleging that the rate increases the District adopted in 2014 were based on a rate structure that violated article XIII D of the California Constitution.[1]  The trial court granted judgment in favor of Miner's Camp and against the District.

The District now contends (1) although Miner's Camp filed a government claim in 2017, its failure to participate in the rate increase hearings in 2014 constituted a failure to fully exhaust administrative remedies; (2) Miner's Camp's action was barred by the statute of limitations in Government Code section 66022; (3) the trial court had no jurisdiction over the action because Miner's Camp did not comply with the validation procedures mandated by Government Code section 66022; (4) Health and Safety Code section 5472 required Miner's Camp to pay the challenged fees under protest and its failure to do so barred any monetary recovery; and (5) the trial court erred in awarding attorney's fees to Miner's Camp under Code of Civil Procedure section 1021.5.

Consistent with the analysis in *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372 (*Plantier*), Miner's Camp was not required to participate in the 2014 rate

---

[1] Undesignated article references are to the California Constitution.

increase hearing before challenging the method by which the District allocated fees. In addition, the District has not established that Government Code section 66022, the validation procedures, or Health and Safety Code section 5472 apply to this action. And the District fails to demonstrate error in the award of attorney's fees to Miner's Camp. Accordingly, we will affirm the judgment.

BACKGROUND

A

Proposition 13 restricted the ability of state and local governments to impose taxes but local governments circumvented those limitations by labeling increases in rates for services as fees, charges or assessments rather than taxes. (*Plantier, supra*, 7 Cal.5th at 380-381; *Valley Baptist Church v. City of San Rafael* (2021) 61 Cal.App.5th 401, 421; *Silicon Valley Taxpayers' Assn. v. Garner* (2013) 216 Cal.App.4th 402, 406.) In 1996, voters passed Proposition 218, known as the "Right to Vote on Taxes Act," to fill in perceived loopholes in Proposition 13. (Voter Information Guide, Gen. Elec. (Nov. 5, 1996) text of Prop. 218, § 1, p. 108; *Paland v. Brooktrails Township Community Services Dist. Bd. of Directors* (2009) 179 Cal.App.4th 1358, 1365 (*Paland*).) The Findings and Declaration section of Proposition 218 stated that local governments had subjected taxpayers to excessive tax, assessment, fee and charge increases, and Proposition 218 would protect taxpayers by limiting the methods by which local governments exacted revenue without their consent. (Voter Information Guide, text of Prop. 218, §§ 3-4, pp. 108-109.) The electorate intended the provisions of Proposition 218 to "be liberally construed to effectuate its purposes of limiting local government revenue and enhance taxpayer consent." (*Id.,* § 5, p. 109.)

Proposition 218 added articles XIII C and XIII D to the California Constitution. (Voter Information Guide, Gen. Elec.*, supra*, text of Prop. 218, pp. 108-109.) Article XIII C relates to voter approval for local taxes other than property taxes. (*Plantier, supra*, 7 Cal.5th at p. 381.) Article XIII D specifies restrictions and requirements for

3

property-related assessments, fees and charges. (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 415.) "Fee" or "charge" are synonymous and mean any levy, other than an ad valorem tax, a special tax or an assessment, imposed by a local government entity on a parcel or a person as an incident of property ownership, including a charge for a property-related service. (Art. XIII C, § 1, subd. (b); art. XIII D, § 2, subds. (a), (e).) Fees for water service are charges for a property-related service. (Voter Information Guide, Gen. Elec*., supra*, Legis. Analyst's analysis, p. 73; *Richmond,* at pp. 426-427; *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 217 (*Bighorn*); *City of Palmdale v. Palmdale Water Dist*. (2011) 198 Cal.App.4th 926, 934; *Paland, supra*, 179 Cal.App.4th at pp. 1371-1372.)

Article XIII D section 6 imposes procedural and substantive limitations for imposing or increasing a property-related fee. The local government entity must mail written notice of the proposed fee to the record owner of each identified parcel upon which the proposed fee is to be imposed. (Art. XIII D, § 6, subd. (a).) The notice must explain the amount of the proposed fee, the basis upon which the amount of the proposed fee was calculated, the reason for the fee, and the date, time, and location of a public hearing on the proposed fee. (*Ibid.*) The local government entity must conduct a public hearing on the proposed fee not less than 45 days after mailing the notice. (*Ibid.*) It must consider all protests against the proposed fee at the hearing. (*Ibid.*) It may not impose the fee if written protests against the proposed fee are presented by a majority of the identified parcel owners. (*Ibid.*) Except for fees for sewer, water, and refuse collection services, no property-related fee may be imposed or increased unless and until that fee is submitted and approved by a majority vote of owners of properties subject to the fee or, at the option of the local government entity, by a two-thirds vote of the electorate residing in the affected area. (*Id.,* § 6, subd. (c); *Bighorn, supra*, 39 Cal.4th at pp. 218-219; *Paland, supra*, 179 Cal.App.4th at p. 1366.)

4

Section 6, subdivision (b) of article XIII D sets forth the substantive requirements for existing, new or increased fees. A local government entity cannot extend, impose or increase a fee unless all of the following requirements are met: (1) revenues derived from the fee do not exceed the funds required to provide the property-related service; (2) revenues derived from the fee are not used for any purpose other than that for which the fee is imposed; (3) the amount of the fee does not exceed the proportional cost of the service attributable to the parcel; (4) no fee is imposed for a service unless that service is actually used by or immediately available to the owner of the property in question; and (5) no fee is imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners. (art. XIII D, § 6, subd. (b).)

B

Miner's Camp acquired the Racetrack Street and Foresthill Road properties in Foresthill, California, in June 2015. The Racetrack Street property had eight cabins that Miner's Camp intended to use as a hotel or motel. The cabins were served by a single water meter. The Foresthill Road property had a commercial building with two units, also served by a single water meter.

In September 2015, Miner's Camp sent an objection to the District about being charged more "minimum charges" for water service than the number of water meters on the Racetrack Street and Foresthill Road properties. The District agreed to correct the account for the Foresthill Road property but denied Miner's Camp's request with regard to the Racetrack Street property and directed staff to collect all past due amounts on the Racetrack Street account. Miner's Camp subsequently presented the District with a written claim with regard to water service charges for the Racetrack Street and Foresthill Road properties pursuant to Government Code section 910 et seq. The District rejected the claim.

5

Within six months of the notice of the District's rejection of the Government Code section 910 et seq. claim, Miner's Camp filed a complaint for damages and petition for writ of mandate against the District. Miner's Camp alleged that the water rate increase the District adopted in 2014 was based on a rate structure that assumed certain properties had more than one water meter serving the property even when there was only one water meter, and that such a rate structure violated article XIII D because the District (1) charged fees that exceeded the funds required to provide Miner's Camp's properties water service; (2) derived revenue from the fees that were used for a purpose other than that for which the fee was imposed; (3) charged fees that exceeded the proportional cost of the service attributable to the parcels owned by Miner's Camp; (4) charged fees for a service that was not actually used by or immediately available to Miner's Camp on its properties; and (5) charged fixed water rates that were based on the recovery of costs, including payment for the repair, replacement, operation and maintenance of "phantom meters," when those costs were not incurred and did not relate to the District's performance of any service. Miner's Camp sought a declaration of the parties' rights and responsibilities and that it was entitled to a refund, an injunction prohibiting the continued use of the water rate structure and a writ of mandate compelling the District to comply with article XIII D.

The District moved for judgment on the pleadings, but the trial court denied the motion. Following the submission of briefs and a hearing, the trial court granted judgment in favor of Miner's Camp and against the District and entered a peremptory writ of mandate against the District. The trial court concluded that the District's water rate structure violated Proposition 218 in that customers such as Miner's Camp were charged for meter maintenance and accounting on a unit-by-unit basis when multi-unit properties like Miner's Camp's were served by a single service connection; therefore, the charges imposed on Miner's Camp exceeded the funds required to provide water service, were necessarily used for a purpose other than that for which the charge was imposed,

and exceeded the cost of service attributable to Miner's Camp's properties. The trial court again rejected the District's affirmative defenses. It declared that the District's water rate structure violated article XIII D and ordered the District to make restitution to Miner's Camp. It enjoined the District from billing and collecting fees imposed in violation of article XIII D and issued a peremptory writ of mandate requiring the District to abandon its rate structure and to create a new rate structure that conforms with article XIII D. The District appealed from the judgment.

Miner's Camp filed a motion for attorney's fees under Code of Civil Procedure section 1021.5, seeking $188,806.50 in fees. The trial court awarded Miner's Camp $89,500 in attorney's fees and $60 in costs. The District also appealed from the attorney's fee order. This Court ordered the appeals consolidated.

We granted leave to file amicus curiae briefs to the Howard Jarvis Taxpayers Association, Association of California Water Agencies, California Special Districts Association, California State Association of Counties, League of California Cities, and Mountain Counties Water Resources Association, and we have considered those briefs. We deny Miner's Camp's motion for calendar preference and we also deny the District's motion to strike.

DISCUSSION

I

The District contends Miner's Camp's failure to exhaust administrative remedies barred any right to recovery. The District suggests it was not enough for Miner's Camp to submit its 2017 government claim; Miner's Camp should have opposed or challenged the District's ratemaking decision during the 2014 public process.

We determine de novo whether the doctrine of exhaustion of administrative remedies applies in a case. (*Plantier, supra*, 7 Cal.5th at p. 380; *Defend Our Waterfront v. State Lands Com.* (2015) 240 Cal.App.4th 570, 580.) "Generally, 'a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this

7

rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." ' [Citations.] 'The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." ' " (*Plantier, supra*, 7 Cal.5th at pp. 382-383.) Nevertheless, the rule requiring exhaustion of administrative remedies is subject to exceptions. (*Id.* at p. 384; *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1126.)

The California Supreme Court's decision in *Plantier* guides our analysis of exhaustion in this case. In *Plantier*, the Ramona Municipal Water District calculated a parcel's annual sewer charge by multiplying the parcel's assigned Equivalent Dwelling Unit (EDU) by the applicable "per-EDU rate." (*Plantier, supra*, 7 Cal.5th at p. 377.) The nature of a parcel's use (for example, residential versus commercial use and category of commercial use) determined the number of EDUs assigned to the parcel, and EDU assignment was different from the "per-EDU rate," which was the same for all parcels. (*Id.* at pp. 376-377.) In various years, the water district sent notices of proposed rate increases to its customers pursuant to Proposition 218. (*Ibid.*) The notices stated that the property owner or tenant directly responsible for the payment of sewer fees could submit a written protest to the proposed increases. (*Ibid.*) None of the plaintiffs in *Plantier* participated in the Proposition 218 rate increase hearings and the water district did not receive any written protest raising an objection to the EDU-assignment method during the Proposition 218 proceedings. (*Id.* at pp. 378-379.)

Separately, however, in 2012, the water district determined that the EDUs assigned to Eugene Plantier's restaurant should be increased to a number more appropriate for the property's size and use. (*Plantier, supra*, 7 Cal.5th at p. 378.) The water district notified Plantier that the EDUs assigned to his property would be increased, resulting in a fee increase. (*Ibid*.) Plantier objected, and along with other commercial property owners, filed an administrative claim that the water district denied. (*Ibid*.) The plaintiffs then sued the water district, alleging the EDU assignment method violated

8

Proposition 218. (*Ibid.*) The water district countered that although the plaintiffs had exhausted one administrative remedy by filing an administrative claim, Proposition 218 imposed another exhaustion requirement (participation in the prior rate increase hearings) that the plaintiffs had not satisfied. (*Id*. at p. 379.) The California Supreme Court ultimately held that a fee payer challenging the *method* of fee allocation need not exhaust administrative remedies by participating in Proposition 218 hearings addressing only proposed *rate* increases. (*Plantier,* at p. 376.)

In this case, the District's exhaustion of administrative remedies defense is based on the notice of a June 25, 2014 public hearing (the Notice). Like the water district in *Plantier*, the District provided notice that it was considering rate increases. The Notice explained that water service utility bills were calculated by adding a fixed rate based on the size of the water meter serving the customer's property and a commodity rate based on the amount of water used during the billing period. The Notice set forth the amount of the proposed fixed rate increases for different types of meters/accounts. The Notice contained directions on how to oppose the proposed rate increases. It did not state that at the June 25, 2014 hearing the District would consider changing how it classified multi-unit customers served by a single water meter for purposes of calculating the fees for those customers.

The District contends *Plantier* is distinguishable because Miner's Camp is challenging the proposed rates set forth in the Notice. But the record does not support the contention. Although Miner's Camp's government claim said the date and place of the event giving rise to the claim was the District's adoption of Resolution 14-06 on June 25, 2014, approving water rate increases that violated Proposition 218, the claim and complaint for damages expressly refer to the water rate *structure*. Miner's Camp asserted that the District charged the Racetrack Street property as if there were eight water meters instead of one for the eight cabins and charged the Foresthill Road property as if there were two water meters instead of one. Miner's Camp argued that because there was only

9

one water meter at each property, the District should not have classified and charged the properties multi-service rates. Like in *Plantier*, the essence of Miner's Camp's challenge was to the *method* of fee allocation, not the *rate* increases.

Although the District says Miner's Camp did not establish that it proceeded through the District's administrative process, the District does not describe the administrative process with which Miner's Camp should have complied. In any event, Miner's Camp submitted a written objection and then presented a written Government Code section 910 et seq. claim before it filed its lawsuit. That claim provided the District with notice and an opportunity to resolve Miner's Camp's disputes prior to litigation. Consistent with the analysis in *Plantier*, Miner's Camp was not required to participate in the 2014 rate increase hearing before challenging the method by which the District allocated fees.

*Hill RHF Housing Partners, L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, a case the District cited pursuant to rule 8.254 of the California Rules of Court, does not require a different result. Even if the 2014 public process provided " 'clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties' " such that it would be proper to infer an exhaustion requirement (*id*. at p. 469, see *id.* at pp. 481-482), the Notice did not inform the public that the District would consider, at the 2014 hearing, how it classified multi-unit customers served by a single water meter for purposes of calculating fees.

Under the circumstances, we need not consider the District's contentions regarding futility, and we deny the District's request to reconsider our ruling on its request for judicial notice.

## II

The District next urges that Miner's Camp's action is barred by the statute of limitations in Government Code section 66022.

10

We review de novo whether a claim is barred by a statute of limitations. (*Lincoln Unified School Dist. v. Superior Court* (2020) 45 Cal.App.5th 1079, 1090; see *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [application of statute of limitations to undisputed facts is question of law].) The defendant bears the initial burden of proving that the plaintiff's claims are time-barred. (*Luke v. Sonoma County* (2019) 43 Cal.App.5th 301, 305.)

Government Code section 66022, subdivision (a) provides, in pertinent part: "Any judicial action or proceeding to attack . . . an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency . . . shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion." The limitations period in Government Code section 66022 applies only to new or modified "fees, capacity charges, and service charges described in and subject to [Government Code] Sections 66013, 66014, and 66016." (Gov. Code, § 66022, subd. (c).) The District states that Miner's Camp did not file its lawsuit within 120 days of the effective date of Resolution No. 14-06, in which the District's board of directors approved and adopted the proposed rate increases set forth in the Notice. The question is whether the proposed rate increases are "fees, capacity charges, and service charges described in and subject to [Government Code] Sections 66013, 66014, and 66016" such that Government Code section 66022 is applicable.

The District claims the fees Miner's Camp challenges are "capacity charges" within the meaning of Government Code section 66013.[2] A "capacity charge" is "a charge for public facilities in existence at the time a charge is imposed or charges for new public facilities to be acquired or constructed in the future that are of proportional benefit to the person or property being charged, including supply or capacity contracts for rights

_____

[2] The District does not claim that Government Code section 66014 or 66016 apply so we do not discuss those statutes.

11

or entitlements, real property interests, and entitlements and other rights of the local agency involving capital expense relating to its use of existing or new public facilities. A 'capacity charge' does not include a commodity charge." (Gov. Code, § 66013, subd. (b)(3).) "Public facilities" include public improvements. (Gov. Code, §§ 66000, subd. (d), 66013, subd. (b)(6).)

The District points to the Notice, Resolution No. 14-06, and the 2014 water study purportedly supporting the proposed fees in the Notice, to argue that the challenged fees contained charges for public improvements. The Notice stated that the proposed rate increases were designed to fund expenses including capital costs. It explained that repair and replacement funds had to be increased to complete infrastructure rehabilitation projects which may include the Sugar Pine Dam transmission line and other projects. The Notice showed that the fixed rate component of monthly water service bills included funds for "Repair & Replacement." The water study likewise stated: "The water rates need to cover current budgeted operating expenses and projected on-going maintenance, capital costs and depreciation." But neither the Notice nor the water study shows what part of the proposed rates, if any, was for existing or new public facilities or improvements. Resolution No. 14-06 stated that the District needed to increase water rates to fund operations, maintenance, repairs, debt obligation and a reserve fund and did not mention capital costs or public improvements or facilities.

In *KCSFV I, LLC v. Florin County Water Dist*. (2021) 64 Cal.App.5th 1015 (*KCSFV I*), the plaintiffs challenged a water district's rate increase under Proposition 218. (*Id.* at p. 1025.) The water district argued that the plaintiffs' action was untimely under Government Code section 66022. (*KCSFV I,* at pp. 1031-1032.) On the question whether the rate increase included a capacity charge within the meaning of Government Code section 66013, the water district relied on a statement in its notice of hearing and a chart presented at the rate increase hearing. (*KCSFV I,* at p. 1032.) The notice stated, " '[t]he rate increases are being proposed in order to provide sufficient revenue to pay for

12

the increasing costs of maintenance and operation of the District's water system, also to provide funding for physical plant and distribution system replacement.' " (*Ibid.*) The chart contained a " 'capital expense' " line item. (*Id.* at p. 1033.) Another panel of this Court concluded that the water district failed to produce sufficient evidence to establish that any portion of the rate increase was a capacity charge under Government Code section 66013, subdivision (b)(3). (*KCSFV I,* at p. 1033.) This was because there was no evidence in the record to support the conclusory assertion in the notice of hearing that a portion of the rate increase would provide funding for physical plant and distribution system replacement. (*Ibid.*) And the " 'capital expense' " line item on the chart did not show that a portion of the rate increase was a charge for public facilities. (*Ibid.*) Instead, the chart lumped together categories of expense and capital expense. (*Ibid.*) The information in the Notice and water study in this case have the same shortcomings.

We conclude that even if the capital cost portion of a water rate can constitute a capacity charge within the meaning of Government Code section 66013, the District fails to establish that the rates adopted in Resolution No.14-06 actually included a charge for existing or new public facilities. Because the District failed to prove that the fees Miner's Camp challenged were "fees, capacity charges, and service charges described in and subject to [Government Code] Sections 66013, 66014, and 66016," the District fails to demonstrate that Government Code section 66022 is applicable.

*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, *Utility Cost Management v. East Bay Mun. Utility Dist*. (2000) 79 Cal.App.4th 1242, and *Regents of University of California v. City and County of San Francisco* (2004) 115 Cal.App.4th 1109 -- cases the District cites -- do not help the District. The first two cases involved actions brought under Government Code section 54999.4 for the refund of " 'capital facilities fees.' " The challenged fees in those cases were clearly fees charged to defray the cost of "capital improvements." (*Indian Wells Valley Water Dist.,* at pp. 1187-1188, 1192; *East Bay Mun. Utility Dist*., at pp. 1245-1246, 1248.) As we have

13

explained, the District did not show that the fees here included a charge for capital costs or public improvements or facilities. The issue in *Regents* was whether the Government Code section 66022 limitations period was triggered by the passing of a resolution increasing water and sewer rates or by the passing of an annual budget resolution. (*Regents,* at p. 1110.) The appellate court did not discuss whether the challenged rates constituted or included a capacity charge.

Citing *Paland, supra*, 179 Cal.App.4th 1358, the District also contends that the challenged fees constitute a service charge under Government Code section 66022. *KCSFV I* rejected the identical argument. (*KCSFV I, supra*, 64 Cal.App.5th at pp. 1031-1033.) We do the same. The issue in *Paland* was whether the minimum monthly water and sewer base rates in that case were a property assessment or a property-related fee under article XIII D. (*Paland,* at pp. 1364-1365.) *Paland* did not consider whether fees were a service charge under Government Code section 66022. Cases are not authority for propositions not considered. (*KCSFV I,* at p. 1032.) The District does not cite any other authority supporting its claim that its fees were a service charge under Government Code section 66022.

### III

The District further argues that because the record contains no evidence Miner's Camp complied with the validation procedures mandated by Government Code section 66022, the trial court lacked jurisdiction over this action.

Any action by an interested person under Government Code section 66022 must be brought pursuant to the validation procedures in Code of Civil Procedure section 860 et seq. (Gov. Code, § 66022, subd. (b).) For reasons we have stated, the District failed to demonstrate that Government Code section 66022 applies to Miner's Camp's action. Therefore, we reject the District's validation procedures claim.

14

IV

The District also argues Health and Safety Code section 5472 required Miner's Camp to pay the challenged rates under protest and its failure to do so barred any monetary recovery.

Health and Safety Code section 5472 is in an article of the Health and Safety Code entitled "Sanitation and Sewerage Systems."  Section 5472 states, "After fees . . .  or other charges are fixed pursuant to this article, any person may pay such fees . . .  or other charges under protest and bring an action against the city or city and county in the superior court to recover any money which the legislative body refuses to refund. Payments made and actions brought under this section, shall be made and brought in the manner provided for payment of taxes under protest and actions for refund thereof in Article 2, Chapter 5, Part 9, of Division 1 of the Revenue and Taxation Code, insofar as those provisions are applicable."  With regard to the fixing of fees, Health & Safety Code section 5471 authorizes "any entity . . . , by an ordinance or resolution approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees . . .  or other charges for services and facilities furnished by it, either within or without its territorial limits, in connection with its water, sanitation, storm drainage, or sewerage system."  (Health & Saf. Code, § 5471, subd. (a).)  "Entity" includes "districts authorized to acquire, construct, maintain and operate sanitary sewers and sewerage systems."  (Health & Saf. Code, § 5470, subd. (e).)

Citing Public Utilities Code section 16461, the District urges that it is an "entity" within the meaning of Health and Safety Code section 5470.  In particular, the District asserts that Health and Safety Code section 5472 applies because the District is a public utility district and a public utility district is generally authorized to operate sewer systems.  Public Utility Code section 16461 provides, "A district may acquire, construct, own, operate, control, or use, within or without or partly within and partly without the district, works for supplying its inhabitants with light, water, power, heat, transportation,

15

telephone service, or other means of communication, or means for the disposition of garbage, sewage, or refuse matter, and may do all things necessary or convenient to the full exercise of the powers granted in this article." "District" means a public utility district formed pursuant to the Public Utility District Act (Pub. Util. Code, § 15501 et seq.). (Pub. Util. Code, § 15503.)

A public utility district has the power to carry out only those particular functions committed to it. (*In re Orosi Public Utility Dist*. (1925) 196 Cal. 43, 54-57.) The record indicates that the District provided water service to its customers. Nothing in the record shows that the District acquired, constructed, maintained and operated sanitary sewers and sewerage systems or was authorized to do so. The District fails to show the grant of any such power. It has, therefore, failed to establish that the requirements of Health and Safety Code section 5472 apply to this action.

V

The District also contends the trial court erred in awarding attorney's fees to Miner's Camp under Code of Civil Procedure section 1021.5.

Code of Civil Procedure section 1021.5 provides that a trial court "may award attorney's fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." The party requesting Code of Civil Procedure section 1021.5 fees must prove all elements of the statute. (*Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, 769 (*Millview County Water Dist.*).)

"Whether [a] plaintiff established its eligibility for fees under section 1021.5 implicates 'a mixed standard of review: To the extent we construe and define the

16

statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion.' [Citation.] 'The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1107; see *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391-392 (*Robinson*).) A trial court abuses its discretion in making an award under Code of Civil Procedure section 1021.5 when there is no substantial evidence to support the required findings. (*Millview County Water Dist., supra*, 4 Cal.App.5th at p. 769.)

## A

The District contends Miner's Camp's action did not confer a significant benefit on the general public or a large class of persons.

In some cases, the significant benefit that will justify an attorney's fee award may be recognized simply from the effectuation of a fundamental constitutional policy. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 939.) "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('significant benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of [attorney's] fees in every case involving a statutory [or constitutional] violation. . . . [R]ather[,] . . . the Legislature contemplated that in adjudicating a motion for [attorney's] fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving [the] benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939-940, italics omitted; see

17

*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 635-637 (*Flannery*).) Even when important public rights are involved, an award of fees is not justified unless the benefit gained from the action is significant and widespread. (*Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 336.) Although the District had 1,966 metered customers in 2014 and only nine were multiple-service accounts, the trial court nevertheless found that a significant nonpecuniary benefit had resulted to all of the District's customers through the directive that the District must abandon its current rate structure and create a new rate structure. On this record, we are unwilling to say the trial court abused its discretion in making this finding.

B

In addition, the District asserts that the award of attorney's fees to Miner's Camp was erroneous because its lawsuit was motivated by "self-interest in paying less while continuing to take eight cabins' worth of water every month."

"A pecuniary interest in the outcome of the litigation is not disqualifying. 'If the party claiming fees has a pecuniary interest in the outcome of the lawsuit, the issue is whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit.' " (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1352.) A trial court must compare the financial incentives and burdens of bringing the suit. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1215-1216.) An award of attorneys' fees " 'will be appropriate except where the expected value of the [plaintiff's] own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Id.* at p. 1216.)

Also, section 1021.5 does not require the benefit conferred on a large class of persons to be the primary effect or purpose of the litigation. (Code Civ. Proc., § 1021.5; *Robinson, supra*, 202 Cal.App.4th at p. 400.) "When each of the criteria is met, the fact the primary effect [or purpose] of the action was to vindicate a plaintiff's personal economic interests does not foreclose an award of attorney fees. Thus, arguments

18

regarding the 'primary objective' or 'primary effect' of the litigation might best be confined to cases where fees are sought under the catalyst theory [and not under section 1021.5]." (*Robinson, supra*, 202 Cal.App.4th at p. 400.)

The District does not assert that the financial burden placed on Miner's Camp in pursuing the litigation was out of proportion to its potential recovery. We reject the District's argument that Miner's Camp's self-interest disqualified it from an award of attorney's fees under Code of Civil Procedure section 1021.5.

C

Moreover, the District argues Miner's Camp failed to establish that a private action was necessary.

The necessity of private enforcement is clear where the plaintiff's lawsuit is against the governmental agency that bears responsibility for the challenged action. (*Woodland Hills, supra*, 23 Cal.3d at p. 941.) In *Robinson, supra,* 202 Cal.App.4th 382, private action was necessary to enforce the plaintiff's statutory rights under the Public Safety Officers Procedural Bill of Rights Act where the Attorney General's office was not involved in the litigation and the governmental entity subject to the statutory requirements vigorously denied it had any responsibility under the statute. (*Robinson, supra*, 202 Cal.App.4th at p. 401.)

Here, the trial court determined Miner's Camp established that the District was unwilling to voluntarily change its water rate structure to comply with Proposition 218, and that private enforcement was necessary. Substantial evidence in the record supports the trial court's finding. The District rejected Miner's Camp's government claim and refused to change the way it billed Miner's Camp.

DISPOSITION

The judgment of the trial court, and the postjudgment order awarding Miner's Camp attorney's fees under Code of Civil Procedure section 1021.5,

19

are affirmed.  Miner's Camp shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


_____/S/_____

MAURO, J.

We concur:


_____/S/_____

HULL, Acting P. J.


_____/S/_____

HOCH, J.